UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FULTON ENERGY GROUP, LLC,

        Plaintiff,                                      Case No. 1:15-cv-1242

v.                                                  HON. JANET T. NEFF

DARIN BURAU and
TYLER HUNTINGTON,

        Defendants.
_____/

**OPINION**

Pending before the Court is Defendants' Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(2) and 12(b)(3) or, in the Alternative, to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt 19). Plaintiff has filed a Response (Dkt 21), and Defendants have filed a Reply (Dkt 23). Having fully considered the parties' submissions, the Court concludes that oral argument would not assist in the disposition of the issues presented. *See* W.D. Mich. LCivR 7.2(d). The Court concludes that this case is properly transferred to North Dakota under § 1404(a).

**I. Background**

This case arises out of Michigan-based Plaintiff Fulton Energy's purchase of Renegade Rentals, LLC, a North Dakota business, from Defendants Darin Burau and Tyler Huntington, each of whom retained a 12.5 percent membership interest in Renegade Rentals after the sale. Plaintiff filed this action alleging that Defendants failed to disclose and/or misrepresented the financial condition of Renegade Rentals in stating that the company had no undisclosed material debts, liabilities or obligations of any kind—thereby fraudulently inducing Plaintiff to enter into Stock

Purchase Agreements, by which Fulton Energy paid Defendants $1,375,000.00 each for shares of Renegade Rentals.

Plaintiff's Complaint alleges claims of (1) Breach of Contract/Declaratory Judgment; (2) Fraudulent Inducement/Misrepresentation; and (3) Unjust Enrichment (Dkt 1). The Complaint contains the following key allegations.

Fulton Energy Group, LLC ("Fulton Energy") is a Michigan limited liability company, with its principal place of business in Grand Rapids, Michigan (Dkt 1 at PageID.1, ¶ 1). The members of Fulton Energy are Chris Frain, Charles Andrew Shaffer, Leigh Jennings, Steve Coe and Carey Bissonet (*id.* at PageID.2, ¶ 2). Chris Frain and Steve Coe reside in Colorado, while the remaining members reside in Michigan (*id.*, ¶ 3). Accordingly, Fulton Energy is a citizen of Michigan and Colorado for diversity jurisdiction purposes (*id.*, ¶ 4). Darin Burau ("Burau") is an individual residing in Williston, North Dakota (*id.*, ¶ 5). Tyler Huntington ("Huntington") is an individual residing in St. George, Utah (*id.*, ¶ 6).

On or about July 8, 2014 and July 30, 2014, Fulton Energy entered into Share Purchase Agreements with Burau and Huntington, respectively, for the purpose of buying a portion of their ownership interests in Renegade Rentals, LLC ("Renegade Rentals") (*id.* at PageID.3, ¶ 1). At the time their respective Share Purchase Agreements were executed, Burau was the owner of fifty-five percent (55%) of the issued and outstanding shares of Renegade Rentals, and Huntington was the owner of forty-five percent (45%) (*id.*, ¶¶ 2, 3). Fulton Energy purchased shares from Burau and Huntington respectively, resulting in Fulton Energy acquiring seventy-five percent (75%) of the issued and outstanding shares in Renegade Rentals (*id.*, ¶ 4). Under the Agreements, Defendants made certain representations and warranties to Fulton Energy with respect to the financial condition

of Renegade Rentals (*id.*, ¶ 5). However, after acquiring the shares of Renegade Rentals, Fulton Energy learned of several, non-disclosed liabilities of Renegade Rentals that existed prior to Fulton Energy's ownership (*id.* at PageID.4, ¶ 10). In short, Renegade Rentals' financial condition was misrepresented by Burau and Huntington (*id.* at PageID.4, ¶ 11). All told, Defendants concealed over $750,000.00 in known liabilities at the time the Agreements were entered into by the parties (*id.* at PageID.5, ¶ 13). All of the liabilities referenced in the Complaint, ¶ 12, existed prior to the closing of the Agreements (*id.*, ¶ 14).

## II. Analysis

Defendants move to dismiss this case on the ground that the Court lacks personal jurisdiction over Defendants, who are domiciled in North Dakota and Utah, and this case involves a North Dakota corporation that has never conducted business in Michigan. Defendants assert that the only connection to Michigan is that it is the home state of Plaintiff. Defendants contend that venue in this district is improper for the same reasons—Defendants are not residents of Michigan, and none of the alleged acts or omissions giving rise to Plaintiff's claims occurred in Michigan, 28 U.S.C. § 1391(b), which likewise warrants dismissal.

Alternatively, Defendants move to transfer this case to North Dakota pursuant to 28 U.S.C. § 1404(a), where litigation involving Renegade Rentals, and related issues between the instant parties, is already pending.

### A. Motion to Dismiss

The parties do not dispute the governing legal principles for jurisdiction and venue. They also do not dispute the essential underlying facts. They dispute whether this case must be dismissed for lack of personal jurisdiction over Defendants and/or improper venue.

3

When a defendant moves to dismiss a complaint for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2), the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *Air Prods. & Controls v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Jurisdiction must be assessed individually with regard to each defendant. *See Calder v. Jones*, 465 U.S. 783, 790 (1984).

FED R. CIV. P. 12(b)(3) provides for a motion to dismiss for improper venue. Similarly, 28 U.S.C. § 1406(a) allows a district court to dismiss or transfer a case due to improper venue. There appears to be a split of authority as to which party has the burden of proof when a challenge to venue is raised. *See Redd v. Stacer*, No. 1:13–cv–1227, 2014 WL 2478136, at *2 (W.D. Mich. June 3, 2014) (citing *Reilly v. Meffe*, 6 F. Supp. 3d 760, 765 (S.D. Ohio 2014)). Regardless, venue must be "'proper for each claim and as to each defendant in order for the court to retain the action.'" *Pioneer Surgical Tech., Inc. v. Vikingcraft Spine, Inc.*, No. 2:09-CV-271, 2010 WL 2925970, at *2 (W.D. Mich. July 21, 2010) (quoting *Verbis v. Iowa Dep't of Human Servs.*, 18 F. Supp. 2d 770, 774 (W.D. Mich. 1998)).

On the record presented, the Court is left with considerable doubt that personal jurisdiction exists over both Defendants and that venue is proper in this district. Despite Plaintiff's arguments to the contrary, this case has its entire nexus in North Dakota, which is the situs of the parties' transactions and the business operations at issue, and where Plaintiffs solicited the purchase of Renegade Rentals, giving rise to the liability asserted against Defendants, North Dakota and Utah residents. Defendants conducted Renegade Rentals solely in North Dakota to engage in business services pertaining to the North Dakota oil fields. Defendants now are subject to contract and tort claims, ostensibly governed by North Dakota law. The fact that Plaintiff operates from its

4

headquarters in Michigan, communicated with Defendants from Michigan, and after the purchase of Renegade Rentals moved certain administrative functions here, carries little weight in this overall scheme of circumstances. But the Court need not engage in a full analysis of jurisdiction and venue. Even if jurisdiction exists and venue is proper here, as Plaintiff contends, the circumstances leave no doubt that the case should be transferred to North Dakota pursuant to 28 U.S.C. § 1404(a). The Court proceeds with the analysis accordingly.

### B. Motion to Transfer

Pursuant to 28 U.S.C. § 1404(a), the Court may transfer a civil action to another district:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

"District courts have wide discretion to transfer an action under 28 U.S.C. § 1404(a) in order to prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Helder v. Hitachi Power Tools, Ltd.*, 764 F. Supp. 93, 95-96 (E.D. Mich. 1991); *see also Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

"[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (quoting *Moses v. Bus. Card Exp., Inc.,* 929 F.2d 1131, 1137 (6th Cir. 1991)). Thus, the court should evaluate case-specific factors affecting both private and public interests, including:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance

of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 729 (E.D. Mich. 2006); *see also Steelcase, Inc. v. Smart Techs., Inc.*, 336 F. Supp. 2d 714, 719 (W.D. Mich. 2004).

"[T]he moving party bears the burden of proving why a court should transfer the action." *Smart Techs.*, 336 F. Supp. 2d at 719. This burden is a heavy one and requires that the moving party show that the factors weigh strongly in favor of transfer. *Id.*

Defendants argue that several of the above factors favor a transfer of venue. They emphasize that Defendant Burau resides in North Dakota, and Defendants do business in North Dakota relating to the issues in dispute. Thus, it would be most convenient for Defendants in this case to litigate in North Dakota. Given that both Defendants live or operate from North Dakota, and the claims all relate to events arising in North Dakota, most of the evidence Plaintiff requires to prove its claims is in North Dakota. It would be less costly for the parties to secure testimony from witnesses since most witnesses, including third party witnesses, are also in North Dakota.

Further, the public's interest in having local controversies adjudicated by a local court familiar with applicable law strongly supports transfer. This proceeding represents a local North Dakota controversy—the sale of a North Dakota corporation by a North Dakota resident and a Utah resident to a buyer (Fulton) who reached out to Defendants in North Dakota. If this case were to be litigated in this district, this Court would be required to apply North Dakota law regarding the disposition of Plaintiff's claims and Defendants' defenses. A North Dakota court will be uniquely familiar with the requisite application of North Dakota law. North Dakota possesses greater interest in adjudicating this dispute, and the interests of justice compel transfer.

As an initial matter, Plaintiff responds that any analysis of venue is inappropriate because Defendants consented to venue pursuant to the terms of the parties' contracts, § 7, whereby Defendants consented to Plaintiff proceeding "in a court having jurisdiction to obtain any appropriate legal or equitable remedies" (Pl. Resp., Dkt 21 at PageID.292). Thus, Plaintiff contends it expressly contracted for the right to bring its action in this Court, and any venue or *forum non conveniens* analysis is inappropriate.

Defendants reply that Plaintiff's reliance on § 7 is misplaced. Defendants assert that they are the "natural plaintiffs" in this action because it was Defendants who first initiated legal recourse by making a demand upon Plaintiff and satisfying the procedural prerequisites of a derivative action under North Dakota law (Dkt 23 at PageID.309). However, "[f]aced with imminent legal action, Plaintiff attempted the proverbial race to the courthouse steps" (*id.*). Defendants argue that "Plaintiff's pre-emptive action should neither be countenanced nor rewarded" (*id.*).

1. Forum Selection Clause

Section 7 of the parties' Agreements provides:

> **Remedies**. In the event of any breach of the covenants provided herein by Seller, Purchaser shall give written notice to Seller reasonably describing such breach. The parties further agree that a breach of this Agreement by Seller could cause economic harm to Purchaser, which may be difficult to precisely measure in terms of monetary damages. To protect and enable Purchaser to fully realize the benefit of the business and goodwill being utilized, *Seller agrees that in the event of a breach of this Agreement by Seller, Purchaser may proceed in a court having jurisdiction to obtain any appropriate legal or equitable remedies*. In any such action, the prevailing party shall be entitled to recover reasonable attorney fees from the non-prevailing party. North Dakota law shall apply to this Agreement.

(Jt. Exs. 2 & 3, Dkt 24 at PageID.325-326, 343-344, emphasis added).

Contrary to Plaintiff's argument, the Court does not find the above contractual provision conclusive of venue in this case. The meaning and import of the provision is unclear, both with

7

respect to venue and the circumstances presented. Neither party offers any argument to clarify or resolve these issues. As explained subsequently, the Court does not find that the language cited by Plaintiff either precludes or influences the § 1404(a) analysis.

In *Atlantic Marine Construction Company, Inc. v. U.S. District Court for the Western District of Texas*, 134 S. Ct. 568 (2013), the Supreme Court addressed the required considerations where a defendant's motion to transfer was premised on a forum selection clause.[1] 134 S. Ct. at 581-83. "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations … and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* at 581 (quoting § 1404(a) (footnote omitted).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). Enforcing a valid forum-selection clause, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system. *Id.* "For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Id.* (quoting *Stewart*, 487 U.S. at 33). In the face of a valid contractual forum selection clause, courts must alter the typical change

---

[1] The procedural posture of this case is distinguishable, but the general principles announced in *Atlantic Marine* presumably apply.

of venue analysis by giving no weight to the plaintiff's choice of forum or the parties' private interests, and the typical choice of law rules do not apply. *See id.* at 581-82.

Nonetheless, the rules in *Atlantic Marine* apply only if the forum selection clause is valid and enforceable. *See Atlantic Marine*, 134 S. Ct. at 581, n.5. "[A] party may always challenge the reasonableness of a forum selection clause. *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 930 (6th Cir. 2014). A three-part test is used to evaluate the enforceability of a forum selection clause: "'(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust.'" *Id.* (citation omitted). Thus, even if Plaintiff is correct that § 7 of the parties' Agreements establishes that Defendants consented to this forum, the contract provision is subject to challenge. Given the ambiguity in the § 7 language, and the circumstances of this case, the Court finds no basis to enforce Plaintiff's purported contractual choice of forum.

As authority for the position that a transfer analysis is inappropriate because Defendants consented to this forum, Plaintiff cites *Zukas Integrated Marketing Solutions, LLC v. Captivate Network*, No. 11–13331, 2011 WL 4889110 (E.D. Mich. Oct. 13, 2011), as "finding venue proper in the Eastern District of MI where forum selection clause in a parties' contract was permissive, reasoning that permissive forum selection clauses 'authorize jurisdiction and venue in a particular forum') (quotation omitted)" (Dkt 21 at PageID.293).

In *Zukas*, the agreement between the parties contained the following provision:

> 12. Governing Law: All matters pertaining to this Agreement shall be governed by the law of the Commonwealth of Massachusetts. Each party hereby irrevocably accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts.

*Zukas*, 2011 WL 4889110, at *1. After the plaintiff filed suit in Michigan, the defendant sought dismissal on the basis of the alleged "mandatory" forum selection clause. The plaintiff argued the language was permissive and "only prohibit[ed] the parties from objecting to the jurisdiction of a Massachusetts court, rather than obligating the parties to pursue litigation exclusively in Massachusetts." *Id.* at *2. The court agreed and denied the defendant's motion to dismiss the Michigan suit. *Id.* at *3.

The Court fails to see how *Zukas* supports Plaintiff's argument here, that the contract language prohibits Defendants from seeking a transfer of venue under § 1404(a). Merely because Plaintiff is permitted to proceed "in a court having jurisdiction to obtain any appropriate legal or equitable remedies," does not exclude consideration of a forum that is more convenient under § 1404(a).[2]

Where a legitimate dispute exists as to whether the forum selection clause applies to the claims at issue is, the dispute minimizes its weight in the Court's transfer analysis. *See* 15 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3854.1 (4th ed.) (a forum selection clause may

---

[2]It is noteworthy that unlike in *Zukas* and the cases cited therein, § 7 contains no language that Defendants waive their right to challenge venue or even any language alluding to waiver. *See Zukas,* 2011 WL 4889110, at *1 ("'Each party hereby irrevocably accepts for itself and in respect of its property, generally and unconditionally,'" the Massachusetts courts' jurisdiction); *Lopesco Industria de Subprodutos Animais, Ltda. v. Free Range Dog Chews, Inc.*, Case No. 10–10970, 2010 WL 3790179, at *1-2 (E.D. Mich. Sep. 22, 2010) (clause providing that an action based upon the agreement "may be brought against any of the parties in the State of Michigan, County of Macomb, and each of the parties consent to the jurisdiction of such court and waives any objection [to] the venue laid herein"); *Dorel Steel Erection Corp. v. Capco Steel Corp.*, 392 F. Supp. 2d 110, 113–14 (D. Mass. 2005) ( forum selection clause stated "[i]n any litigation connected with this Agreement, the parties hereto hereby consent to and confer jurisdiction on the courts of the State of Rhode Island, United States of America and on the United States District Court for the District of Rhode Island, and hereby expressly waive any objections to venue in such courts").

be ignored as a factor if it does not clearly apply to the action or if its binding nature is uncertain or disputed) (citing *e.g., Auto-Wares, LLC v. Wis. River Co-op Servs.*, No. 1:09-cv-702, 2010 WL 2508356, at *3 n.3 (W.D. Mich. 2010); *Sylvester Material, Inc. v. John Carlo, Inc.*, No. 3:04CV7686, 2005 WL 1176054, at *4 (N.D. Ohio May 17, 2005) (declining to give weight to a forum-selection clause in a § 1404(a) transfer analysis because the applicability of the clause was in dispute); *Pax, Inc. v. Veolia Water N. Am. Operating Servs., Inc.*, 347 F. Supp. 2d 281, 284 (W.D. Va. 2004) (the record was insufficient to determine whether a disputed forum-selection clause was binding)).

2. Section 1404(a) Factors

Turning to the relevant factors under § 1404(a) set forth above, the Court concludes that a transfer of venue is appropriate. This case is centered on conduct and activities initiated in North Dakota, where Renegade Rentals operated and Plaintiff solicited the purchase from Defendants. Plaintiff's claims and allegations arise from the parties' business relationship, but more specifically from the financial condition of Renegade Rentals and Defendants' representations thereof at the time they sold the company to Plaintiff. Plaintiff negotiated separate Agreements with Defendants on their home territory, which designate North Dakota law as the law governing the Agreements.

Defendants operated Renegade Rentals in North Dakota; no operations occurred in Michigan, nor did Renegade have any connection to Michigan, other than Plaintiff's move of the business entity and certain administrative oversight to Michigan subsequent to Defendants' sale. Neither Defendant resides in Michigan or had any connection to this state prior to the sale. Defendant Bureau resides in North Dakota, where he operated Renegade Rentals, and he has never been to Michigan. Defendant Huntington resides in Utah, and had never been to Michigan until he

was involved in assisting Plaintiff with Renegade Rentals after the sale, which even then, involved only three brief visits at Plaintiff's behest. In short, Defendants' conduct and the financial liabilities at issue have no connection to Michigan.[3]

Under the above circumstances, a number of the factors weigh in favor of a transfer to North Dakota: the convenience of most of the likely witnesses; the location of relevant documents and relative ease to access of sources of proof; the locus of the operative facts; the availability of process to compel the attendance of unwilling witnesses; and, because North Dakota law governs Plaintiff's claims—the forum's familiarity with the governing law.

Although Michigan is Plaintiff's asserted choice of forum, it does not appear to have any prevailing connection to the legal claims. Moreover, Plaintiff's choice of forum is called in question given that Plaintiff filed this suit only after notice of Defendants' North Dakota action against Plaintiff. Thus, the Michigan forum does not warrant the weight generally accorded the plaintiff's choice of forum.

This dispute properly belongs before the North Dakota courts, which are most familiar with, and have a significant interest in, the governing law. The several other legal disputes between the parties, which most certainly involve relevant witnesses and evidence, have proceeded in the North Dakota courts (Dkt 24, Jt. Exs. 6-8). Any claim by Plaintiff that the North Dakota forum is inconvenient carries little, if any, weight since Plaintiff operates other businesses in North Dakota, which prompted Plaintiff's interest in purchasing Defendants' North Dakota business, because

---

[3]These circumstances underscore the doubtful basis for personal jurisdiction and venue, notwithstanding Defendants' email and other communications to and from Michigan during negotiation of the Share Purchase Agreements. It is doubtful that Defendants' email and communications in response to Plaintiff's purchase offer provide a basis for personal jurisdiction, particularly with respect to Defendant Huntington, who has never visited Michigan.

Plaintiff believed Renegade Rentals would be complimentary to its other North Dakota businesses. Prior to acquiring Renegade Rentals, Plaintiff's owners also owned several affiliated companies, including Tyton Holdings, Inc., that provided services to the oil fields of North Dakota (Dkt 21 at PageID.279-280; *see also* Burau Aff., Jt. Ex. 1, ¶¶ 5-8; Bisonet Aff., Jt. Ex. 10, ¶¶ 5, 6). Plaintiff's owners, with or through their associates and representatives, solicited Defendants' business sale in North Dakota, and investigated and negotiated the purchase agreements by traveling to and meeting with Defendants in North Dakota (Burau Aff., Jt. Ex. 1, ¶¶ 10-17).

While the parties offer no specific argument on certain other factors, such as the relative means of the parties, the Court cannot conclude on the underlying circumstances that Plaintiff would suffer significant detriment in having to proceed in the North Dakota federal district court, as opposed to the Western District of Michigan. The Court finds the great weight of the factors, including the interests of justice, warrant transfer.

Accordingly, Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt 19) is granted.

### III. Conclusion

For the reasons stated, the Court concludes that this case is properly transferred to North Dakota pursuant to 28 U.S.C. § 1404(a). Accordingly, the Court denies Defendants' motion to dismiss this case; the Court grants the motion in the alternative, to transfer the case to North Dakota. An Order will enter consistent with this Opinion.

Dated: March 1, 2017            /s/ Janet T. Neff
                                            JANET T. NEFF
                                            United States District Judge